UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

DELLENA BISHOP
        Plaintiff

v.                                                               Civil Action Number
                                                                          1:09CV039-J

MICHAEL J. ASTRUE, Commissioner
  Of Social Security,
        Defendant

## MEMORANDUM OPINION

      This matter presents the challenge of Dellena Bishop ("plaintiff" or "claimant") to the decision of the defendant Commissioner denying her claim to disability insurance benefits. After examining the materials of record, the arguments of the parties and applicable authorities, the Court is of the opinion that the decision of the Commissioner should be affirmed.

      Ms. Bishop filed her application in October of 2003, alleging that she had been unable to engage in any substantial gainful employment since December of 2001. After two hearings and an intervening Appeals Council remand, the Administrative Law Judge ("ALJ") determined that plaintiff's degenerative disc disease of the lumbar spine with chronic low back pain, status-post lumbar microdisckectomy, L5-S1, degenerative disc disease of the cervical spine with left upper extremity pain, and obesity were severe impairments, but that she retained the residual functional capacity for a significant range of light work and could return to previous relevant work. This became the final decision of the Commissioner when the Appeals Council denied review on February 27, 2009.

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. N.L.R.B. v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way," and this Court is not permitted to reverse a decision merely because substantial evidence would have supported the contrary decision. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff argues that the ALJ erred in failing to find that her back condition satisfied a "Listing".[1] At Step three of the sequential evaluation process, the inquiry is whether the claimant has a medical condition that meets or exceeds the Listed. If the plaintiff carries the burden of establishing that s/he meets a Listing, the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991), Burress v. Secretary, 835 F.2d 139 (6th Cir. 1987). Listings are to be interpreted very strictly, and the plaintiff must establish the existence of all elements of the Listing. Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), Hale v. Secretary, 816 F.2d 1078 (6th Cir. 1987), Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986). To meet a listing, a claimant must present specific *medical evidence* to satisfy all of the Listing criteria. 20 C.F.R. Sec. 416.925. That is, at Step Three, it

---

[1] Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings").

is insufficient to point to the existence of an impairment and use various types of evidence to argue that the functional restrictions imposed by that impairment are disabling; rather, the plaintiff must point to medical evidence establishing *all* of the criteria set out in the listing. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The plaintiff cannot show that s/he "equals" a Listing simply by showing overall functional impact of his condition; "equivalence" is a test used only when the claimant's impairment is unlisted, and it is satisfied only by presenting medical evidence of findings "equal in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

To satisfy Listing 1.04, Ms. Bishop was required to show specified levels of nerve root compression or spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication. The medical records show some lumbar limitations; however, the medical records also show objective testing within normal limits, and they fail to show evidence of extreme difficulty in walking or need for an assistive device. Thus, she is unable to show any one of the three alternative requirements. The Court finds no error.

Ms. Bishop argues that the ALJ erred in evaluating the credibility of her testimony. It is well-established that resolving conflicts in the evidence and deciding questions of credibility are matters within the province of the ALJ. Wright v. Massanari, 321 F.3d 611 (6th Cir. 2003). SSR 96-7p provides instruction on credibility evaluation as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements,

> the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

20 C.F.R. § 404.1529© describes the kinds of evidence, including the factors below, that the adjudicator is to consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1) Daily activities;
2) The location, duration, frequency, and intensity of pain or other symptoms;
3) Precipitating and aggravating factors;
4) The type, dosage, effectiveness, and side effects of any medication taken to alleviate your pain or other symptoms;
5) Treatment, other than medication, received for relief of pain or other symptoms;
6) Any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

The ALJ considered these factors in light of the record. He noted that the records showed such comments as "good progress" and "resolving," and "observably better." He noted that the objective testing revealed successful surgery. He pointed to Dr. Nazar's November 15, 2006 neurological exam, which found her results within normal limits. He discussed her medication and her daily activities. After examining all of the relevant factors, he found that they were simply inconsistent with symptoms of the "intensity, persistence and limiting effects" her testimony reported.

The ALJ also stated, "After listening to the claimant's testimony, observing her demeanor and evaluating said testimony in light of the objective medical records, it appears that

the claimant is trying to make her symptoms sound significantly more severe than they actually are." Tr. 31. The opportunity observe the witness's testimony is an important reason for according such deference to the ALJ's credibility determinations. "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is *charged with the duty of observing a witness's demeanor and credibility*." Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997) [emphasis added]. In view of the deference owed the ALJ's determination, and in view of the decision's having set out specific reasons relating to the permissible factors, the Court finds no error.

Claimant next contends that the ALJ erred in claiming to give to her treating neurosurgeon's opinion "controlling weight" while simultaneously failing to incorporate all of the restrictions imposed by that physician. Dr. Nazar opined in April of 2003 that Ms. Bishop should not bend at the waist; she should have the ability to change position frequently from sitting, standing, and walking; and carrying above the waist should be limited to 20-25 pounds. Tr. 242.

The ALJ stated that he was accepting the limitations described by Dr. Nazar, but he omitted the "no bending at the waist" restriction and his position change stipulation was "a sit/stand option at 30-45 minute intervals." Tr. 29. The vocational expert testified that "frequent" change of position would be from one-third to two-thirds of the time. Tr. 555. Plaintiff argues that the 30-45 minute time frame used by the ALJ would allow only "occasional"

position change.

Significantly, the position-change requirement described by Dr. Nazar is imposed by pain.  Thus, if Ms. Bishop's pain allows her to change positions less often than he described, she is not medically required to follow a schedule.  Ms. Bishop herself testified that she could sit for 45-60 minutes at a time and stand for 30-60 minutes at a time.  Tr.  499.  The limitations utilized by the ALJ are well within her description of her own capacity.  There is no error.

Plaintiff argues that the ALJ erred in determining that she could return to her previous work, contending that she did not perform her receptionist work at the level of substantial gainful activity.  However, she did not raise such an argument at the hearing, when the vocational expert was present to address the matter.  Given her burden to show inability to perform past relevant work, it was incumbent upon her to establish that what reasonably appeared to be both "relevant" and "substantial" work was not what it appeared to be.

Furthermore, regardless of how she actually performed her receptionist job, the Step Four inquiry is whether the claimant is capable of performing past work either as she performed it or as it is generally performed.  The ALJ provided the vocational expert with Ms. Bishop's residual functional capacity, and based on that information, the VE testified that she would be able to perform receptionist work as it is generally performed.  The Court finds no error.

An order in conformity has this day entered.